On behalf of Ms. Seim, I'm from Jones Ward in Louisville, Kentucky, and I'm happy to be here today to argue on behalf of Ms. Seim and the Kentucky residents she represents. I'd like to sort of pick up where counsel for HomeAway left off, and that's in the idea that performance of these terms matters. Ms. Seim is in a little different position than Mr. Arnold in a couple different respects. First, she had five different properties that she had subscriptions on, and she agreed to five different terms and conditions as separate contracts for each of those properties. Those terms were in effect as of September of 15, and those are the terms that did not include any arbitration clause. So our position is that the five contracts she agreed to did not contain an arbitration clause. She renewed or actually changed the type of subscription on one of those properties in March of 16. In April of 16, HomeAway changed the terms to the April terms that the previous argument was about. So we have three different sets of terms that are applicable to Ms. Seim's case, September of 15, February of 16, April of 16. The only way that HomeAway can win here is if the February of 16 terms and only the February of 16 terms apply to all five of her properties, and factually and legally that's not correct under Kentucky law. It's either that the September 15 terms with no arbitration clause apply to four of her properties or the April terms apply to all five. Under either scenario, there's no arbitration agreement. The reason I say that is the September of 15 terms allowed Ms. Seim to reject substantive changes or amendments to that contract. The September of 15 terms were very clear that they were property-specific, and Kentucky law, and that's the Middlesbrough case, is very clear that those are each separate contracts. So by trying to impose the arbitration agreement through the March 16 subscription onto those four properties, HomeAway is attempting to amend the agreement that she already had with them. She rejected that amendment and filed suit pursuant to the terms of the September 15 terms and conditions, and that's what should apply to those four properties. That's Kentucky law. The Middlesbrough case addresses that specifically. The reason that I say that performance matters from HomeAway's perspective is, again, with the timeline, she renewed in March of 16 on one of her properties. She filed suit in April. They filed their arbitration motion in July. At the time they filed their arbitration motion, there was a different set of terms and conditions. They say they filed it under the February 16, but at the time they filed their motion, the April terms had come into effect. They can't have it both ways where in the terms it says any subsequent amendment or any subsequent new terms and conditions replace your old terms. That's what the April, that's what the February, that's what the April terms both say. So if that were the case, they would have filed for arbitration under the April terms for Ms. Seim's properties. They didn't. They chose the February 16 terms. And I don't understand why they did that because there's nothing in the contract that says the terms at the time you file suit are what apply or the terms at the time that we file our arbitration motion are what apply. That's a provision that is not found at all in terms and conditions. What the terms say is these terms are in effect until the next terms go online, in which case those terms now govern your arrangement with Homeaway on this property. And so at the time they filed their arbitration motion, the April terms were in effect. That is illusory in practice. That is them in their carrying out of the terms and their performance of the terms showing that they have unilateral right to decide which terms apply to them, which terms apply to the users, and which terms they seek to enforce. And I think that's what's the most important thing about this case is that no matter what, the February 16 terms can't apply to all five of her properties. If she has one contractual relationship with Homeaway, then the April 16 terms apply. Under Kentucky law, those are illusory. And that is a state court long-held common law that is not preempted under the new Supreme Court case that they cited in the Arnold case. So if there's one contractual relationship, the April 16 terms apply, that's an illusory contract. And not only is it an illusory contract overall, but the arbitration agreement itself is illusory. There's nothing in the terms that limit the unilateral right to change or exclude the arbitration clause from the unilateral right to change provision that Homeaway reserved for itself. Tomorrow, Homeaway could say that if this case goes to arbitration, Jasper Ward can't represent you in arbitration. And that would theoretically under their argument apply, and I wouldn't be able to do it. Well, I guess it would be probably worse if they said I have to represent someone in arbitration. But at any rate, they retain that right to unilaterally change the arbitration agreement, not just the overall agreement. And that renders the arbitration agreement itself illusory, and therefore under Kentucky law never formed. But going back to the last case, why isn't the question of whether it's illusory something that should be decided by the arbitrator under the – since it incorporates the AAA rules? There's a Kentucky Supreme Court case that directly addresses that. That's the Damar case. In that case, there was a delegation clause, Damar v. – or Dixon v. Damar. There was a delegation clause specifically enumerated on the back of a contract. And the Kentucky Supreme Court decided this is – Excuse me. Bless you. The Kentucky Supreme Court addressed directly their arguments from rent-to-center about validity and said this is a formation issue. And so our position is that the delegation clause contained in the arbitration agreement is a – the illusory nature of that is a formation issue because the illusory provision also is included in the arbitration agreement. There's nothing that excludes the unilateral right to change in the arbitration agreement. And so under the Kentucky Supreme Court case, there must be a clear and unmistakable agreement to delegate this to the arbitrator. First, there's – it is just a stray reference to the consumer rules. There's no link, which was easy for them to do. There's nothing that says specifically which consumer rule that they're saying the consumer is agreeing to. So there's nothing clear and unmistakable about the delegation provision itself. But that's not really the issue. The issue is whether or not that's an illusory contract or that's a separate agreement, and that's for the court to decide. So we do think under Kentucky law that the arbitration agreement and the delegation provision are formation challenges that we're making to those. And Kentucky law is – Are they entire terms and conditions or just the arbitration? Well, both. I mean, I think that the idea that the unilateral right to change is a term of the arbitration agreement is clear because they have that right to change it. There's nothing that says this unilateral right to change does not apply to the arbitration agreement. And, in fact, they've proven that by deciding which terms and conditions to bring their arbitration motion under. They have shown that they can decide at will how they seek to enforce the contract. But you're not saying the entire terms and conditions are invalid, or maybe you are. Well, I think the April of 16 – under Kentucky law, the April of 16 terms and conditions were never formed. They were overall illusory, but that means each contract contained in it is also illusory to the extent that you say the arbitration agreement is – or that one says the arbitration agreement is a separate contract. And there are arbitration agreements – you know, the old saying, they wanted to impose arbitration in the worst way and did. There are arbitration agreements and there are online consumer contracts that specifically say the arbitration agreement does not – or the unilateral right to change does not apply to the arbitration agreement. They didn't say that. They could have said that. What their contract also is clear about – and this is on page 25 of our brief, and this gets back to the issue of whether these are five separate contracts or one contractual relationship. The terms and conditions specifically talk about how each property that you agree to, the terms and conditions, when you pay your subscription fee, it covers just that property. You can't substitute a new property in. This is terms and conditions that apply to this property, which creates a separate contract. Each of those separate contracts under the September of 15 terms required Ms. Sime to file suit in the Western District of Texas, in Travis County, Texas, and that's what she did. So she carried out her responsibility and her right. The terms have a specific statute of limitation of one year. That is a lesser statute of limitation than Kentucky law applies, so that is something that is a specific – under Kentucky law is a specific new right that's been created to file suit within one year under the September of 15 terms, and that's what she did. So to the extent that HomeAway seeks to amend those, those terms also included a provision that allowed her to reject any substantive changes, and she rejected those substantive changes. And so to the extent that those four properties were continually governed by the September of 15 terms and conditions, that did not include any arbitration clause whatsoever. It specifically said she had to file suit in Travis County, Texas, which is what she did. And if there are no further questions, I believe I need to retain the balance of my time for rebuttal. Thank you, sir. Mr. Keohokalole. Good morning again, Your Honors. May it still please the Court. Mr. Ward began by suggesting that this case turns on performance issues like in the Arnold case. It does not. In fact, this is a very straightforward case on the undisputed facts.  Those terms and conditions included, for the first time, an arbitration agreement. That arbitration agreement includes a delegation clause. There's an express reference to the AAA rules, which delegate to an arbitrator questions of arbitrability. And the February terms and conditions, unlike the April terms and conditions as a whole, gave members an express right to opt out of changes that they didn't like. Well, Ms. Syme did not opt out. In fact, a month later, she affirmatively assented to the February terms and conditions, and she renewed her subscription. She opted in. And none of this is in dispute. As she says on page 18 of her brief, quote, Ms. Syme does not dispute that the arbitration provision applies to her Kentucky Derby home, even retroactively. In other words, that arbitration agreement is undisputedly valid. It is undisputedly enforceable. And that is all the court needs to know to resolve this appeal. Because every argument that Mr. Ward just made are arguments about the scope of the February 2016 arbitration agreement, not about its validity and not about its enforceability. He's trying to carve up this arbitration agreement, which applies to any and all claims, trying to carve that up in a way that implicitly only applies to the one property that she renewed in March of 2016, and variations of arguments along those lines. She tries to say it doesn't cover the claims, it doesn't cover other properties, et cetera. But all of these arguments and all these objections, the district court found lack merit. We agree with the district court that these are meritless. But right or wrong, in the first instance, these all need to be decided by the arbitrator because of the delegation clause. And so — The Petrofac decision, that's where we said incorporating the AAA rules is tantamount to a delegation clause. That is a delegation clause. It satisfies the clear express standard. Is that — but is that incorporation question, whether a contract that incorporates the AAA rules is incorporating the delegation clause, is that a State law decision? I mean, does that turn on State law? Even though there's a gloss, Federal law provides the requirement of clear and unmistakable, but why isn't that a State law decision of what contracts incorporate? So when the States have been applying those, the clear and unmistakable standard in their courts, the decisions that I've read, we cite some of them in the Arnold brief as well, they're attempting to apply that clear and unmistakable standard, which started at the Supreme Court. I forget the case where it was first articulated and then hasn't been applied since. That's a provision of the Federal Arbitration Act. Now, I mean, just as an aside, I think there's some debate now as to whether that standard still exists after the Renner Center case, but we don't need to get into that because I think we satisfy the clear and unmistakable standard. Right, but that makes it even harder. I mean, the starting place is does it incorporate, and then the question as well, does it reach this higher standard of clear and unmistakable? I guess where I'm getting at is do you know of any cases in Kentucky that have found reference to the AAA as a delegation clause? I'm not aware of one way or another, Your Honor, but I believe every Federal court of appeals to address the issue in the context of the AAA, in the context of jams. In fact, this court in August this year applied the U.N. international trade rules and said that incorporation of any of these satisfies the clear and unmistakable standard, and given that that standard I believe is Federal, a state can reach its own judgment, but I don't think it would be binding on this court as a matter of state law. And so I think the real dispute that is before this court is the question that Mr. Ward led off with. Which is the arbitration agreement that applies? Is it really the February 2016 arbitration agreement, the one he concedes is valid and enforceable and works at least as to the Kentucky Derby home, or is somehow there an argument that the April terms and conditions trumps those? She accuses us, Ms. Syme accuses us of cherry-picking the arbitration agreements. Emphatically, that is not true. The February and the April arbitration agreements are nearly verbatim identical. Ms. Syme agreed to arbitrate in March, and she agreed to the February arbitration agreement. The April terms and conditions came out a month later, merely restated the agreement that the parties had entered into a month before. The only changes between April and February were changes to non-arbitration terms. For instance, HomeAway updated its privacy policy and included that in the terms and conditions. HomeAway added new paragraphs on terminations of listings and added that to the terms and conditions. But what HomeAway did not do from February to April is change the arbitration agreement. And so, in fact, I think Ms. Syme's case is sort of gored on the horns of a dilemma. If the April arbitrations agreement is valid, then the supersession provision that says this supersedes preexisting agreements kicks in. A valid agreement says this supersedes, it kicks in, and so we will arbitrate under April. But if April is invalid for some reason, then it can't supersede February. It's one or the other. You can't both supersede and be illusory. And, in fact, this court held exactly that in the Olander case at pages 566 to 567, a later-in-time contract that has a provision that says this supersedes earlier-in-time contracts. If the later-in-time one is illusory, then it doesn't supersede because illusoriness is a flaw in the entire contract. It can't just supersede in part. And so, in our view, February is the applicable one. But if the court thinks arbitration should be done under April, of course we're not going to object because the arbitration agreements are identical. And so that just takes us back to all of the other arguments that Mr. Ward raises. The phrase, any and all claims we think should be interpreted by the arbitrator, but that's about as broad as someone could possibly write an arbitration agreement. Many of the cases, in fact, I think all of the cases that Mr. Ward has cited are cases where the arbitration agreements are just written differently. They say claims arising out of a contract or claims related to a contract. And if that were so, then that would be a much narrower arbitration agreement. But there's no principle of law that forbids parties to enter in a single contract to enter into a broad arbitration agreement that applies to claims that relate to other parts of their economic relationship. And, in fact, the arbitration agreement here makes that clear. It says, quote, it applies, quote, regardless of whether prior versions of these terms required arbitration. It put Ms. Symon notice that this arbitration agreement was going to cover claims that predate and possibly just unrelated to this particular February terms and conditions. So unless the court has any questions, we think that there should be an affirmance here, firstly because of the delegation clause. But if the court wants to get into the merits, as the district court did, then we think all of those arbitrability arguments ultimately lack merit and that she must arbitrate. Thank you, sir. Thank you. You have five minutes for rebuttal. I'm sorry? You have five minutes for rebuttal. Thank you, sir. Our position is that they did change the arbitration clause between February and April because they added the unilateral right to change. That provision in the contract is not excluded from the arbitration clause and, therefore, the February and April arbitration clauses are different. They added a term. To the extent that the court decides that it is one contractual relationship and that April arbitration agreement was never formed, then it should go back to the September of 15, because the September of 15 terms she had the right to reject changes and the arbitration clause, to the extent that they sought to amend that agreement to add an arbitration clause or to change the terms of those contracts, those four separate contracts, she rejected those changes. She was never on notice that the terms that she was agreeing to in March of 16 would amend other subscriptions that had specific start and end dates. The subscription agreements that were previously in effect for her properties are very specific to those properties. On page 25 of our brief, we have a number of those terms that talk about how those are specific to those properties. HomeAway could have, because they had multiple users, in fact, the only users in front of this court today all had multiple properties. HomeAway knows that it's users that list properties list multiple properties. HomeAway knows that those are separate subscription agreements with different start and end dates. If HomeAway really was trying to tell users that it was amending their other subscriptions through this separate agreement, it could have said that. It could have said that clearly. It doesn't say that clearly. It doesn't say anywhere this is amending your other subscriptions that may run out tomorrow or may run out six months from now. If it said that and was clear, then they would have a better argument, but it doesn't say that. And so she was not on notice that they were seeking to amend her September terms. So to the extent that the arbitration agreements are different in February and April because of that unilateral right to change, they should have brought this arbitration motion under the April terms. Those were the terms that were in effect. Those were the superseding terms. They chose to bring it under February and February only, and that as applied and in practice shows why this is illusory because it gives them the right to decide which terms apply on which day. Unless there are any questions, I thank you for your time. Thank you, sir. The case will be submitted.